**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JONATHAN ROMAN,**

**Plaintiff,**

vs.                                                                          **9:24-CV-754**
                                                                                   **(MAD/ML)**

**MATTHEW THOMAS, ZACHARY THOMAS,**
**and CHARLES THOMAS,**

**Defendants.**

---

**APPEARANCES:**                                          **OF COUNSEL:**

**OFFICE OF MARTIN J. KEHOE, III**           **MARTIN J. KEHOE, III, ESQ.**
2009 Western Avenue
Albany, New York 12203
Attorney for Plaintiff

**OFFICE OF THE NEW YORK**                    **OLIVIA R. COX, AAG**
**STATE ATTORNEY GENERAL**                   **RYAN W. HICKEY, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Jonathan Roman ("Plaintiff"), who is presently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action *pro se* on June 10, 2024. *See* Dkt. No. 1. Plaintiff was assigned *pro bono* counsel on January 2, 2026. *See* Dkt. No. 40. With the Court's leave, Plaintiff's counsel filed an amended complaint on June 29, 2026. *See* Dkt. No. 62. The amended complaint alleges that Corrections Sergeant Matthew Thomas, Corrections Officer Zachary Thomas, and Corrections Officer Charles Thomas

1

("Defendants") violated Plaintiff's Eighth Amendment rights while he was incarcerated at Auburn Correctional Facility in Auburn, New York.  *See id.*  Specifically, the amended complaint alleges that each Defendant: (1) used excessive force on Plaintiff; and (2) failed to intervene while the other Defendants used excessive force on Plaintiff.  *See id.* at 5-6.

A jury trial is set to begin on August 17, 2026.  *See* Dkt. No. 54.  Plaintiff and Defendants have submitted pretrial motions *in limine*.  *See* Dkt. Nos. 90, 91.  For the following reasons, both motions are granted in part, denied in part, and reserved upon in part.

## II. BACKGROUND

The following factual summary is derived from the parties' trial briefs and Plaintiff's amended complaint.

On September 6, 2022, while Plaintiff was in line for food at Auburn Correctional Facility, a nonparty officer asked him to submit to a pat-frisk.  *See* Dkt. No. 88 at 3; Dkt. No. 98 at 3.  Defendants contend that Plaintiff was uncooperative and argumentative.  *See* Dkt. No. 88 at 3.  Plaintiff asserts that he "objected to the manner in which he was touched . . . and requested that any strip frisk be conducted in a private and dignified manner."  Dkt. No. 98 at 3.  Defendants state that Defendant M. Thomas directed the nonparty officer "to place mechanical restraints on Plaintiff's wrists."  Dkt. No. 88 at 3-4.  The parties agree that all three Defendants escorted Plaintiff to the Center Room.  *See id.* at 4; Dkt. No. 98 at 3.

In the Center Room, Defendants state that they removed Plaintiff's restraints and Defendant Z. Thomas explained how the strip-frisk would proceed.  *See* Dkt. No. 88 at 4.  They assert that Defendant Z. Thomas ordered Plaintiff to face him, and while Plaintiff was turning around, Plaintiff grabbed "an unknown white object from his waistband."  *Id.*  According to Defendants, "force became necessary to gain Plaintiff's compliance and attempt to retrieve the

contraband item." *Id.* Defendants claim that Z. Thomas and C. Thomas "used body holds" on Plaintiff to push him against some bars and bring him to the floor, at which point they "fell on top of Plaintiff." *Id.* They state that Defendants Z. Thomas and C. Thomas each attempted to force one of Plaintiff's arms behind his back. *See id.* During that process, Defendants assert that Plaintiff freed his arm, put the unknown item in his mouth, and swallowed it. *See id.* Defendants eventually restrained Plaintiff and brought him to his feet. *See id.*

Plaintiff asserts that "Defendants used unnecessary and excessive force against him and that each Defendant participated in the force and/or failed to intervene despite having a reasonable opportunity to do so." Dkt. No. 98 at 3. He states that he "emerged from the room with visible injuries, including wounds requiring immediate medical treatment and sutures." *Id.* The amended complaint alleges that Plaintiff suffered a bloody laceration on his forehead that required six stitches, and both his eyes were swollen shut. *See* Dkt. No. 62 at 4. Plaintiff contends that he experiences recurrent headaches as a result of the incident. *See* Dkt. No. 98 at 3. Furthermore, the amended complaint alleges that x-rays taken at the facility's clinic and three fecal samples provided over a seventy-two-hour "special watch" period did not confirm the identity of the object he supposedly swallowed. Dkt. No. 62 at 4-5.

### III. DISCUSSION

**A.     Motions *in Limine***

A motion *in limine* enables the Court to make an advance ruling on the admissibility of certain anticipated trial evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022). Generally, all "[r]elevant

evidence is admissible" unless otherwise provided by an act of Congress, the United States

Constitution, or the Federal Rules of Evidence. FED. R. EVID. 402. For instance, Rule 403 grants

"the trial court broad discretion to exclude even relevant evidence if its probative value is

substantially outweighed by the danger of confusion of the issues or if it would be needlessly

cumulative." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989)

(citing FED. R. EVID. 403; *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986); *United States*

*v. Martinez*, 775 F.2d 31, 37 (2d Cir. 1985)). Courts considering motions *in limine* may reserve

decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union*

*Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). The Court is also

"free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as

"the case unfolds, particularly if the actual testimony differs from what was contained in the

[movant's] proffer." *Luce*, 469 U.S. at 41-42.

**B.      Courtroom Presentation**

Plaintiff first moves for "permission to appear in civilian clothing and without visible

restraints" during the trial. Dkt. No. 90 at 6. He also asks to be called by his name, "Mr. Roman,"

rather than "inmate," "felon," or his identification number. *Id.*

The Court has already ordered that Plaintiff be provided with khaki pants and a button-

down shirt to wear during the trial. *See* Dkt. No. 70. This Court has also previously granted

incarcerated plaintiffs' requests to attend civil trials without shackles. *See Brisman v. Volpe*, No.

9:15-CV-466, 2018 WL 3691236, *4 (N.D.N.Y. Aug. 3, 2018) (citing *Outman v. Waldron*, No.

9:14-CV-540, 2016 WL 4435234, *3 (N.D.N.Y. Aug. 19, 2016)). Defendants do not take any

position regarding civilian clothing and the absence of visible restraints. *See* Dkt. No. 101 at 4.

4

Accordingly, this portion of Plaintiff's motion is granted.  The Court may reconsider its decision on restraints if Plaintiff's conduct at trial so requires.  *See Brisman*, 2018 WL 3691236, at *4.

Defendants state that they intend to refer to Plaintiff "as either 'Mr. Roman,' the Plaintiff, or as Incarcerated Individual Roman to the extent it does not inhibit Defendants' ability to give their testimony." Dkt. No. 101 at 5.  The Court acknowledges that referring to Plaintiff by epithets that needlessly highlight his incarcerated status risks subjecting him to undue prejudice.  *See* FED. R. EVID. 403.  Defendants have not argued that there is any probative value to calling Plaintiff "Incarcerated Individual Roman."  Thus, the Court will permit Defendants to call Plaintiff "Mr. Roman" or "the Plaintiff."  This portion of Plaintiff's motion is granted.

## C.    Plaintiff's Underlying Conviction

Plaintiff asks the Court to exclude the name, nature, and details of his underlying criminal conviction.  *See* Dkt. No. 90 at 6-7; Dkt. No. 102 at 3-4.  Defendants argue that they should be permitted to cross-examine Plaintiff regarding his criminal history.  *See* Dkt. No. 91-2 at 4-7.  They "agree to limit reference to Plaintiff's conviction as to the fact he was convicted, the date of conviction, and the sentence length[,]" Dkt. No. 101 at 5, which moots this portion of both motions.  Nevertheless, a review of the pertinent legal authority is warranted.

Federal Rule of Evidence 609(a)(1)(A) governs impeachment through evidence of a felony conviction.  *See* FED. R. EVID. 609(a)(1)(A).  The Rule states that evidence of the conviction is admissible, subject to Rule 403, in a civil case.  *See id.*  Rule 609 limits the use of prior convictions where "more than [ten] years have passed since the witness's conviction or release from confinement for it, whichever is later."  *Id.* at 609(b).  However, this limitation does not apply when the witness is still incarcerated for the at-issue criminal conviction.  *See Espinosa*

*v. McCabe*, No. 9:10-CV-497, 2014 WL 988832, *4 (N.D.N.Y. Mar. 12, 2014) (citing *Blake v. Coughlin*, 205 F.3d 1321, 2000 WL 233550, *1 (2d Cir. 2000) (table decision)).

Although Plaintiff was arrested and sentenced for manslaughter in 2015, more than a decade ago, he remains in custody for that conviction. *See* Dkt. No. 91-1 at 4, 7. Thus, the ten-year limitation does not apply, and the Court "must admit the name of [the] conviction, its date, and the sentence imposed unless . . . the probative value . . . is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Morris v. Seward*, No. 5:16-CV-601, 2021 WL 5585796, *3 (N.D.N.Y. Nov. 30, 2021) (quoting *United States v. Estrada*, 430 F.3d 606, 620-21 (2d Cir. 2005)) (internal quotation marks omitted).

"In balancing probative value against prejudicial effect under Rule 609, courts examine: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Id.* at *4 (citation and internal quotation marks omitted). The weightiest factor is "whether the crime, by its nature, is probative of a lack of veracity." *Id.* (citation and internal quotation marks omitted). Although "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," *Estrada*, 430 F.3d at 617 (citation omitted), "[v]iolent crimes . . . are generally not particularly probative as to honesty or veracity[,]" *Morris*, 2021 WL 5585796, at *4 (citing *Estrada*, 430 F.3d at 617-18).

The parties have provided little detail on the circumstances of Plaintiff's conviction. The conviction is approximately eleven years old and "not particularly probative as to honesty or veracity." *Id.* Plaintiff's credibility is of high importance, given that he was present for the incident giving rise to this case and claims to suffer lasting health issues because of it. Moreover,

6

although manslaughter is not directly related to the conduct at issue in this case, the Court notes the possibility of a prejudicial connection to Plaintiff's potentially resistive behavior during the use of force incident. *See Thousand v. Corrigan*, No. 9:15-CV-1025, 2017 WL 4480185, *5 (N.D.N.Y. Oct. 6, 2017) (collecting cases). The Court determines that the date and sentence of Plaintiff's prior conviction, as well as its classification as a felony, are admissible. The Court will exclude evidence of the offense's name and surrounding details.

**D.     Plaintiff's 2024 Disciplinary History**

Plaintiff moves for exclusion of some of his disciplinary history, arguing that it "[does] not bear on what happened in the center room in 2022." Dkt. No. 90 at 7-8; *see* Dkt. No. 102 at 4-5. Defendants argue that Plaintiff's disciplinary history is admissible and probative of truthfulness or untruthfulness. *See* Dkt. No. 91-2 at 7-8; Dkt. No. 101 at 8-9.

The record shows that Plaintiff was found guilty at a July 2024 DOCCS superintendent hearing for violating rules in a New York state regulation governing "[s]tandards of incarcerated individual behavior[.]" 7 N.Y. COMP. CODES R. & REGS. § 270.2; *see* Dkt. No. 91-1 at 17. The violations are described as "weapon" (rule number 113.10), "altered item" (rule number 113.11), and "smuggling" (rule number 114.10). Dkt. No. 91-1 at 17. According to a report associated with those offenses, "one straightened metal tweezer tied to the handle of a white toothbrush with white cloth" was found hidden in Plaintiff's clothing on July 19, 2024. *Id.* at 27.

Plaintiff argues that allowing evidence of the 2024 discipline would "invite the forbidden inference that a person who previously violated prison rules probably disobeyed or assaulted officers on the occasion in suit." Dkt. No. 90 at 7. He invokes Rule 608(b), which provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." FED. R. EVID. 608(b); *see* Dkt. No. 90

7

at 7.  The Rule allows cross-examination into such specific instances if they are probative of the witness's character for truthfulness or untruthfulness.  *See* FED. R. EVID. 608(b)(1).  Relying on that same Rule, Defendants argue that they should be allowed to cross-examine Plaintiff about his 2024 discipline because it is probative of truthfulness or untruthfulness.  *See* Dkt. No. 91-2 at 7-8.

Based on the available information surrounding Plaintiff's 2024 discipline, the Court concludes that the disciplinary record is at least somewhat probative of truthfulness.  *See Tubbs v. Uhler*, No. 9:19-CV-126, 2024 WL 1219754, *3 (N.D.N.Y. Mar. 21, 2024) (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977); *Bacon v. United States*, 355 Fed. Appx. 569, 570-71 (2d Cir. 2009) (summary order); *Tapp v. Tougas*, No. 9:05-CV-1479, 2018 WL 1918605, *4 (N.D.N.Y. Apr. 20, 2018)).  The rule violations were based on an apparent attempt to sneak a hidden and potentially dangerous object past corrections staff.  However, these acts occurred approximately two years prior to trial and nearly two years after the incident giving rise to this case, which significantly undermines probative value and increases potential prejudicial effect.  *See* FED. R. EVID. 403; *Fox v. Madison*, No. 9:15-CV-390, 2026 WL 305069, *5 (N.D.N.Y. Feb. 5, 2026) (citing *Shepherd v. Smith*, No. 9:15-CV-665, 2019 WL 5212883, at *6 (N.D.N.Y. Oct. 16, 2019)); *United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989).  Thus, the Court will not permit Defendants to cross-examine Plaintiff on his 2024 disciplinary record.  The records themselves are also inadmissible extrinsic evidence under Rule 608(b).  *See Starmel v. Tompkin*, 634 F. Supp. 3d 41, 46 n.2 (N.D.N.Y. 2022) (citation omitted).  This portion of Plaintiff's motion is granted, and the corresponding portion of Defendants' motion is denied.

E.    **Plaintiff's Other Discipline**

Plaintiff argues that evidence of disciplinary matters separate from the 2024 incident should be excluded.  *See* Dkt. No. 90 at 8.  The record shows that Plaintiff was the subject of a

8

Tier III disciplinary hearing related to the frisk incident on September 6, 2022. *See* Dkt. No. 91-1 at 10. The details surrounding the hearing are limited, but Plaintiff submits "that he accepted the disciplinary disposition to avoid a greater penalty[.]" Dkt. No. 90 at 8. He asks the Court to exclude evidence of the disposition and its resulting sanctions because "[t]he hearing did not decide the Eighth Amendment questions before this jury[,]" and highlights the risk of prejudicial effect. *Id.* Defendants seek permission to cross-examine Plaintiff about the disciplinary hearing because "it is likely Plaintiff's testimony will create a factual dispute about what occurred." Dkt. No. 101 at 9.

To the extent that Defendants intend to use the cross-examination for impeachment purposes, Rule 608, described above, applies again. Defendants' precise purposes for eliciting this testimony, however, are not immediately clear. Given the limited facts presently available to the Court regarding the frisk-related Tier III hearing, the Court reserves decision on this issue.

**F.       Limits on Documentary Hearsay**

Plaintiff asks the Court to impose limits on several pieces of documentary evidence, including use-of-force reports, misbehavior reports, and grievance memoranda. *See* Dkt. No. 90 at 9. He argues that "[t]he Court should require Defendants to identify the precise hearsay exception and purpose for each exhibit and each embedded statement before publication to the jury." *Id.* Defendants point out that the parties have already stipulated use-of-force reports and a memorandum into evidence, and have stipulated to a misbehavior report and other grievance memoranda as to foundation. *See* Dkt. No. 101 at 5; *see also* Dkt. No. 84.

As the Supreme Court has recognized, "evidentiary stipulations are a valuable and integral part of everyday trial practice [whereby] parties [may] agree in writing to the admission of otherwise objectionable evidence[.]" *United States v. Mezzanatto*, 513 U.S. 196, 203 (1995).

9

Without some showing of an "overriding procedural consideration[,]" parties are bound by their evidentiary stipulations. *Id.* at 202. Accordingly, Plaintiff's motion is denied insofar as the parties have already stipulated to the challenged material.

For hearsay material not covered by the parties' stipulations, the Court would require identification of a hearsay exception regardless of a party's motion. *See* FED. R. CIV. P. 803. Hearsay evidence unsupported by an exception in the Federal Rules of Evidence, a federal statute, or a Supreme Court rule is inadmissible. *See United States v. Figueroa*, No. 7:23-CR-161, 2023 WL 8373566, *1 (S.D.N.Y. Dec. 4, 2023). Because hearsay admissibility determinations are fact-specific, the Court reserves decision on this portion of the fifth point in Plaintiff's motion.

**G.      Witness Credibility Opinions and Legal Conclusions**

Plaintiff moves to block witness testimony on legal conclusions and credibility. *See* Dkt. No. 90 at 10. The Court construes this generalized argument as a request to ensure compliance with the Federal Rules of Evidence, which the Court would require at trial regardless of a party's motion. In response, Defendants state that they "have no intention of providing an opinion as to the credibility of Plaintiff's story." Dkt. No. 101 at 6. Defendants agree that the jury is responsible for credibility determinations, and the Court is responsible for instructing the jury on the law. *See id.* Thus, the Court denies this portion of Plaintiff's motion as moot.

**H.      Proof of Ingestion of Foreign Object and Other Medical Opinions**

Plaintiff moves to limit testimony and documentary evidence regarding the foreign body that Plaintiff potentially ingested during the use of force incident. *See* Dkt. No. 90 at 10-11; Dkt. No. 102 at 21-22. Specifically, Plaintiff asks the Court to redact portions of a radiology report and testimony from Nurse Practitioner Richard Slagle, who treated Plaintiff after the incident, which discuss the foreign object. *See* Dkt. No. 90 at 11. According to Plaintiff, because "no

disclosed expert has reliably linked the [object] to an act during the center-room encounter, and Slagle's testimony identified only an inorganic object on imaging[,]" the evidence "cannot be used as after-the-fact proof that Defendants' disputed narrative was true." *Id.* at 10. Defendants oppose this portion of Plaintiff's motion. *See* Dkt. No. 101 at 10-11.

The Court has already ruled that the radiology report is admissible. *See* Dkt. No. 103 at 2. The report is a business record within the meaning of the Federal Rules of Evidence, it is part of Plaintiff's medical records, and it is relevant.

As for Slagle's testimony, Rule 701 permits lay witnesses to offer "their opinions when those opinions are based on a combination of their personal observations of the incident in question and background information they acquired through earlier personal observations." *360Heros, Inc. v. Mainstreet Am. Assurance Co.*, No. 5:17-CV-549, 2021 WL 3771855, *4 (N.D.N.Y. Aug. 25, 2021) (citation and internal quotation marks omitted); *see Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995). If the witness is not certified as an expert, which Slagle is not, the opinion cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c). In the medical context, healthcare providers testifying as non-expert witnesses may discuss facts and "'opinions formed during their treatment, including causation, severity, disability, permanency and future impairments.'" *Rosales v. LaValley*, No. 9:11-CV-106, 2014 WL 3477620, *3 (N.D.N.Y. July 11, 2014) (quoting *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 109 (D. Conn. 2013)).

The Court has already ruled on the parties' objections to portions of Slagle's deposition testimony, as well as the pre-recorded testimony of another witness, Dr. Vikas Agrawal, M.D. *See* Dkt. No. 103. The Court ordered redactions of speculative, non-responsive, and otherwise

11

inadmissible testimony.[1]  The Court therefore declines to redact the deposition testimony any further, and the parties are referred to the Court's prior rulings.  *See id.*

## I.      Sexual Contact Allegations

Plaintiff moves to limit evidence of "a separate allegation concerning the initial pat frisk." Dkt. No. 90 at 11.  When Plaintiff grieved the use of force incident, he submits that DOCCS created multiple grievances and treated one as a sexual assault allegation.  *See id.*  According to Plaintiff, the excessive force allegations were processed separately.  *See id.*  He argues that "[t]he separate allegation is not before the jury and should not be retried through grievance records or investigative conclusions."  *Id.* at 12.  Defendants agree.  *See* Dkt. No. 101 at 7.  They state that, "[t]o the extent Defendants seek to mention the pat frisk, it is limited to the fact that Plaintiff refused to comply[,] . . . which then provided Defendants probable cause to complete a strip frisk pursuant to DOCCS policies and procedures."  *Id.*  Accordingly, this portion of Plaintiff's motion is denied as moot.

On a separate issue also related to sexual contact allegations, Defendants argue that "Plaintiff should be precluded from introducing evidence regarding claims and/or damages not alleged in the complaint[.]"  Dkt. No. 91-2 at 16.  According to their motion, "Defendants anticipate that Plaintiff will attempt to introduce a new claim and/or evidence alleging that Defendants sexually assaulted him in the course of the cell extraction on September 24, 2021, that was not previously alleged in his Complaint."  *Id.*  They also contend that Plaintiff will try to link a sinus infection diagnosis to the 2021 cell extraction.  *See id.*  Counsel clarified at the pretrial

---

[1] The Court adds that at deposition, Defense counsel asked questions about whether Plaintiff's injuries were consistent with a baton strike.  The Court determined that no witness could testify as an expert on the use of force.  Testimony regarding baton dimensions, the amount of force used, and any effect of the weight and strength of the person using the baton would have been speculative.  The Court struck inadmissible testimony accordingly.

conference that these events are unrelated to this case and were erroneously included in the motion.  Moreover, Plaintiff confirms that he does not intend to bring a new cause of action.  *See* Dkt. No. 102 at 15-16.  Accordingly, this portion of Defendants' motion is denied as moot.

**J.      Exclusion of Portions of Pre-Recorded Testimony**

Both parties' motions discuss challenged portions of pre-recorded deposition testimony.  *See* Dkt. No. 90 at 12-14; Dkt. No. 91-2 at 19-21.  The Court has separately reviewed and ruled on those objections.  *See* Dkt. No. 103.  The parties are referred to those rulings.

**K.      Plaintiff's Symptoms and Treatment Records**

Plaintiff argues that he should be able to testify regarding his symptoms.  *See* Dkt. No. 90 at 14; Dkt. No. 102 at 15.  Defendants agree that relevant evidence regarding his symptoms may be admissible.  *See* Dkt. No. 101 at 11.  This Court has recently recognized that "'a [lay] witness may testify as to individual symptoms that he has experienced so long as he does not give a conclusion as to the underlying medical cause of such condition.'"  *Holley v. Spinner*, No. 9:22-CV-1119, 2025 WL 2410372, *8 (N.D.N.Y. Aug. 20, 2025) (quoting *Johnson v. White*, No. 9:14-CV-715, 2015 WL 6449126, *3 (N.D.N.Y. Oct. 23, 2015)).  Therefore, the Court will permit the testimony, subject to the Federal Rules of Evidence.

Relatedly, Plaintiff argues that his certified medical records are admissible under Rule 803(6), and statements made for diagnosis or treatment are admissible under Rule 803(4).  *See* Dkt. No. 90 at 15.  The Court will rule on the admissibility of such evidence at trial, subject to the proponent's establishment of relevance, foundation, and applicable hearsay exceptions.  The Court reserves decision on the medical records.

**L.      Unrelated Medical and Lifestyle Information**

Plaintiff moves for health and lifestyle information unrelated to this case to be redacted from his medical records.  *See* Dkt. No. 90 at 15.  He asks to preclude "wholesale publication of a prison medical chart as character evidence."  *Id.*  Defendants state that they "do not intend to admit evidence regarding Plaintiff's substance-use history, addiction treatment, mental-health diagnoses or classification, smoking, constipation or stool burden, unrelated neck or chest imaging, and unrelated medications[.]"  Dkt. No. 101 at 11.

The proponent of any part of the medical records must establish its relevance, lay the proper foundation, and authenticate it before the Court will admit it into evidence.  *See* FED. R. EVID. 401-02, 602, 901.  Instead of ordering immediate redaction of all portions unrelated to this action, the Court will permit the parties, at trial, to introduce relevant excerpts of Plaintiff's medical records with proper foundation and authentication.  The parties are also encouraged to stipulate to admissible and/or redactable portions of Plaintiff's medical records.  *See Zeltman v. Infinigy Sols., LLC*, No. 1:20-CV-571, 2024 WL 3653800, *3 (N.D.N.Y. Aug. 5, 2024).  The Court therefore reserves decision on this portion of Plaintiff's motion.

**M.    Use of Force Report and Video from September 6, 2022**

Plaintiff makes several arguments regarding videos and a use of force report from the day of the alleged assault.  *See* Dkt. No. 90 at 16-19.

First, Plaintiff asks the Court to tell the jury that footage of the hallway outside the Center Room "depicts the hallway before or after the event and does not depict the center-room encounter."  *Id.* at 16.  Defendants do not contest this position and clarify that they "do not intend to claim that the video evidence is 'of the incident.'"  Dkt. No. 101 at 12.  Jurors will see that the video does not depict the actual use of force.  The Court therefore finds it unnecessary to tell the jury that the video does not show the use of force.  This part of Plaintiff's motion is denied.

14

Second, "Plaintiff seeks to offer the certified Use of Force Report . . . for a limited and important purpose." Dkt. No. 90 at 16. Defendant opposes that request on relevance grounds and contends that it improperly raises a collateral issue. *See* Dkt. No. 101 at 12. Plaintiff submits that the report indicates the use of force was recorded, but the recording was never reviewed. *See* Dkt. No. 90 at 16. This video is separate from the hallway video, according to Plaintiff, and he contends that Defendants may have improperly failed to produce it during discovery. *See id.* Plaintiff also discusses various methods of authenticating the report without calling the facility superintendent to testify. *See id.* at 17. If Plaintiff seeks to admit the report, he may introduce it at trial, and the Court will rule at that time.

As for the potentially missing video, Plaintiff asks the Court to hold a pretrial proceeding under Federal Rule of Evidence 104. *See id.* That Rule contemplates judicial resolution of preliminary questions, such as witness qualification, existence of a privilege, and admissibility of evidence. *See* FED. R. EVID. 104. Plaintiff proposes that the Court should order "Defendants to provide competent evidence, by a knowledgeable declaration, witness, or attorney proffer," supplying information about the video. Dkt. No. 90 at 17. Plaintiff does not appear to challenge admissibility of the video; rather, it appears he seeks clarification on where the video is and whether it exists. Because discovery is long completed, the Court denies Plaintiff's request for a pretrial proceeding.

Third, Plaintiff asserts that graduated relief under Federal Rule of Civil Procedure 37(e) may be warranted "[i]f the Court finds that relevant footage existed, should have been preserved, was lost through a failure to take reasonable steps, cannot be restored or replaced, and prejudices Plaintiff[.]" *Id.* at 18. Specifically, Plaintiff cites Rule 37(e)(1), which permits the Court to "order measures no greater than necessary to cure the prejudice" to the moving party. FED. R.

CIV. P. 37(e)(1).  Plaintiff argues that the Court should reserve on imposing a remedy until after "factual development" of the issue has occurred.  Dkt. No. 90 at 18.  Defendants oppose Plaintiff's request because "it is based on speculative assertions that relevant video footage of the alleged incident even existed that could be preserved."  Dkt. No. 101 at 12.

A court may impose sanctions under Rule 37(e) for loss of electronically stored information ("ESI") "'[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.'"  *Ocasio v. City of Canandaigua*, No. 18-CV-6712, 2025 WL 1064721, *4 (W.D.N.Y. Apr. 9, 2025) (quoting FED. R. CIV. P. 37(e)).  District courts in this Circuit have summarized the inquiry as follows:

> The first [step] is to decide if the rule applies at all—that is, if a party failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation." FED. R. CIV. P. 37(e).  If so, then the second step is to decide if there has been "prejudice to another party from loss of the information," in which case the Court "may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1).  Lastly, the third step to consider—regardless of prejudice to any other party—is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation," in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Id.* (quoting *Karsch v. Blink Health Ltd.*, No. 17-CV-3880, 2019 WL 2708125, *13 (S.D.N.Y. June 20, 2019)).  Here, the Court agrees with Defendants that Plaintiff's speculative statements of a potentially lost video—which may or may not exist—are insufficient to trigger a remedy under Rule 37.  Accordingly, at this juncture, the Court denies Plaintiff's motion on this issue.  He may renew his request at a later time.

16

**N.    Damages**

Plaintiff points out that his complaint, which was originally drafted without counsel, seeks $600,000 in damages. *See* Dkt. No. 90 at 19; Dkt. No. 1 at 7. The amended complaint reiterates this figure,[2] *see* Dkt. No. 62 at 7, as the amendment was permitted only to name a remaining John Doe Defendant, *see* Dkt. No. 60. Plaintiff's motion *in limine* asserts that the Court should disregard the $600,000 figure because "[u]sing it would create a collateral dispute about jailhouse pleading assistance and invite the jury to punish an unsophisticated litigant for complying imperfectly with a damages-demand convention." Dkt. No. 90 at 19. Plaintiff's motion also asks the Court to preserve his attorney's "ability to make an evidence-based compensatory-damages requestion in summation, subject to an instruction that counsel's requested figure is argument and not evidence." *Id.* He clarifies that counsel does not "intend to suggest a particular numerical amount for pain and suffering or punitive damages." Dkt. No. 102 at 17.

Defendants, in their motion and opposition brief, argue that the Court should preclude Plaintiff from suggesting a specific dollar amount. *See* Dkt. No. 91-2 at 18; Dkt. No. 101 at 13-14. They contend that jurors may incorrectly believe that counsel's suggestion is supported by legal authority, which could improperly sway their damages calculation if liability is found. *See* Dkt. No. 91-2 at 18.

"As the Second Circuit has repeatedly instructed, a complaint filed *pro se* 'must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests.'" *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)). "'This is particularly so when the

---

[2] Although the amended complaint states that Plaintiff seeks a total of $600,000 "from all [D]efendants for compensatory and punitive damages[,]" the compensatory and punitive damages sought from each Defendant add up to $1,000,000. Dkt. No. 62 at 6-7.

17

*pro se* plaintiff alleges that h[is] civil rights have been violated.'" *Id.* (quoting *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012)). Out of special solicitude, the Court grants Plaintiff's request to disallow publication of the damages amount in the original and amended complaints. *See Encarnacion v. Olivo*, No. 9:21-CV-986, 2024 WL 896362, *7-8 (N.D.N.Y. Mar. 1, 2024).

Turning to the prospect of Plaintiff's counsel presenting a damages figure in summation, this Court has previously recognized that "'specifying target amounts for the jury to award is disfavored[.]'" *Balentine v. Shurgot*, No. 9:22-CV-285, 2023 WL 6622034, *6 (N.D.N.Y. Oct. 11, 2023) (quoting *Brown v. Cornell*, No. 9:17-CV-1036, 2021 WL 2711511, *9 (N.D.N.Y. July 1, 2021)). However, "'[t]he determination of whether to allow a plaintiff to request a specific damage amount from the jury is within the court's discretion.'" *Id.* (quoting *Brown*, 2021 WL 2711511, at *9). In recent similar cases, the Court has allowed the plaintiff to offer a specific amount of non-economic damages during summation. *See id.*; *Brown*, 2021 WL 2711511, at *9. The Court has also reserved decision on this issue and permitted the plaintiff to renew the request after presentation of evidence. *See Tubbs*, 2024 WL 1219754, at *4-5. The Court reserves decision here, and Plaintiff may renew his request at trial after presenting his evidence.

**O.    Settlement and Indemnification**

Plaintiff argues that pursuant to Federal Rule of Evidence 408, "[n]either side should refer to settlement demands, offers, conferences, or statements made during compromise discussions." Dkt. No. 90 at 20. Similarly, Defendants argue that "[e]vidence regarding indemnification must be precluded because it is not relevant to any issue before the jury" and may prejudice Defendants. Dkt. No. 91-2 at 17. In his motion and response, Plaintiff states that he "will not mention indemnification during the liability or compensatory-damages phase[.]" Dkt. No. 90 at 20; *see* Dkt. No. 102 at 16. He also argues that Defense counsel "should not imply that

18

Defendants personally will bear all defense costs or any compensatory judgment." Dkt. No. 90 at 20. In response, Defendants state that they "do not seek to admit evidence regarding settlement, fees, and indemnification[.]" Dkt. No. 101 at 7. Because this issue is uncontested, the Court denies this portion of both motions as moot.

**P.     Qualified Immunity, Dismissed Matters, and Procedural History**

Plaintiff argues that the Court should preclude discussion of qualified immunity, dismissed claims, and the procedural history of the case, such as discovery disputes and the naming of the final John Doe Defendant. *See* Dkt. No. 90 at 20; Dkt. No. 102 at 14. Defendants similarly argue that Plaintiff "should be precluded from introducing evidence relating to claims dismissed from this action." Dkt. No. 91-2 at 14. Defendants state that they do not intend to discuss the challenged topics "unless deemed necessary and appropriate by the Court[.]" Dkt. No. 101 at 7. Therefore, the Court denies this portion of both motions as moot.

**Q.     "Minor Injury" Designation and Eighth Amendment Standard**

Plaintiff asks the Court to "preclude 'minor injury' as a dispositive legal theme and other misstatements of the Eighth Amendment standard." Dkt. No. 90 at 21; *see* Dkt. No. 102 at 11-12. In opposition, Defendants urge the Court to admit certain portions of Slagle's deposition testimony. *See* Dkt. No. 101 at 11.

Plaintiff's "dispositive legal theme" argument is not entirely clear to the Court. To the extent that Plaintiff reiterates his arguments regarding Slagle's deposition testimony, the Court refers the parties to its separate ruling on the deposition testimony objections. *See* Dkt. No. 103. Insofar as Plaintiff asks the Court to preclude other witnesses or counsel from characterizing Plaintiff's injuries as "minor," the Court reserves decision and will rule on an individualized basis.

19

To the extent that Plaintiff asks the Court to prevent Defendants from misrepresenting the Eighth Amendment standard, the Court will instruct the jury on the law before they start deliberations. *See United States v. Al Kassar*, 660 F.3d 108, 126 (2d Cir. 2011) (quoting *United States v. Goldstein*, 442 F.3d 777, 781 (2d Cir. 2006)) (emphasizing the importance of informing the jury of the correct legal standard). Plaintiff's motion is granted insofar as neither party will be permitted to instruct the jury on the law.

### R.    Undisclosed Witnesses, Exhibits, and Opinions

Plaintiff requests that the Court preclude the parties from "introduc[ing] an undisclosed witness, document, demonstrative, medical causation theory, or expert-like opinion without first making the required showing outside the jury's presence." Dkt. No. 90 at 21. As the Court already noted, discovery has long concluded in this case. Both parties are reminded of their disclosure obligations. The Court reserves decision and will rule on an individualized basis if either party attempts to offer undisclosed evidence at trial.

### S.    Use of Interpreter and Sequestration of Witnesses

Plaintiff, who might testify through a Spanish-language interpreter, asks the Court to instruct the jury "that use of an interpreter, pauses for translation, accent, or differences in phrasing are not evidence of credibility, intelligence, or evasiveness." Dkt. No. 90 at 21. Plaintiff requests that Defense counsel ask short, noncompound questions and refrain from commenting "on the translated form of an answer[,] except to resolve an actual interpretation issue outside the jury's hearing." *Id.* at 21-22. Defendants have no objection to those requests. *See* Dkt. No. 101 at 8. The Court therefore grants this portion of Plaintiff's motion.

Plaintiff also asks the Court to sequester all nonparty fact witnesses pursuant to Federal Rule of Evidence 615. *See* Dkt. No. 90 at 22. Defendants do not oppose that request. *See* Dkt.

20

No. 101 at 8.  The Court grants Plaintiff's motion and will exclude nonparty fact witnesses from the courtroom "until after they have testified." *Thousand*, 2017 WL 4480185, at *7.

**T.    Conspiracy**

Defendants ask the Court to preclude Plaintiff "from arguing or eliciting evidence of conspiracy[.]"  Dkt. No. 91-2 at 8.  They assert that evidence and argument regarding conspiracy would be irrelevant because Plaintiff does not allege a conspiracy claim.  *See id.* at 8-9.  They also argue that allowing evidence or argument of conspiracy would prejudice Defendants, confuse the issues, and risk misleading the jury.  *See id.* at 9-10.

Plaintiff states that he does not intend to allege an independent conspiracy claim.  *See* Dkt. No. 102 at 6.  He opposes Defendants' argument by contending that evidence of their truthfulness or untruthfulness should be permitted because "[t]his action turns substantially upon competing accounts of what occurred during the September 6, 2022[,] incident[,] . . . [and] Plaintiff must remain free to expose those inconsistencies and argue the reasonable inferences flowing from them."  *Id.*  Plaintiff correctly points out that in an earlier case involving similar claims, the Court noted the possible probative value of evidence that the defendants lied about or exaggerated the underlying incident.  *See id.* (citing *Holley*, 2025 WL 2410372, at *6).  In *Holley*, the Court allowed that evidence while barring an independent conspiracy claim and evidence that the defendants engaged in a conspiracy.  *See Holley*, 2025 WL 2410372, at *6.  The Court agrees with Plaintiff to that extent.

At this time, the Court will not impose a widespread ban on evidence or argument related to Defendants' truthfulness regarding the alleged assault.  Plaintiff may elicit such evidence, subject to the Federal Rules of Evidence.  However, Defendants' motion is granted insofar as they seek to preclude evidence of an unalleged conspiracy.

21

**U.** **"Goon Squad"**

Defendants move to preclude Plaintiff from referring to them and other DOCCS employees as "being part of a 'goon squad,' 'beat up squad,' or . . . 'thugs[.]'" Dkt. No. 91-2 at 11. Defendants argue that these terms would confuse the jury and cause undue prejudice. *See id.* Plaintiff states that he does not intend to use those terms. *See* Dkt. No. 102 at 7. Accordingly, this portion of Defendants' motion is denied as moot.

**V.** **Unrelated Prior DOCCS Incidents**

Defendants argue that the Court should preclude Plaintiff from referencing or offering evidence of recent publicized incidents involving DOCCS, including the murders of Robert Brooks and Messiah Nantwi and the 2025 DOCCS strike. *See* Dkt. No. 91-2 at 11-12. They argue that these incidents are irrelevant to the present case, unfairly prejudicial to Defendants, and risk confusing the issues and misleading the jury. *See id.* Plaintiff states that he does not intend to introduce such evidence. *See* Dkt. No. 102 at 7-8. Accordingly, this portion of Defendants' motion is denied as moot.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion *in limine* (Dkt. No. 90) is **GRANTED in part**, **DENIED in part**; and **RESERVED UPON in part**; and the Court further

**ORDERS** that Defendants' motion *in limine* (Dkt. No. 91) is **GRANTED in part**, **DENIED in part**, and **RESERVED UPON in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 13, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge